FILED

2008 Oct-23  AM 08:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JOHN GANDY,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CV-02-BE-1605-S** |
| | ] | |
| **HUNTSMAN PACKAGING** | ] | |
| **CORPORATION, and PLIANT** | ] | |
| **CORPORATION,** | ] | |
| | ] | |
| **Defendants.** | ] | |
| ——————————————— | ] | ——————————————— |
| | ] | |
| **JAMES RAY STOVERS,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CV-03-BE-0901-S** |
| | ] | |
| **HUNTSMAN PACKAGING** | ] | |
| **CORPORATION, and PLIANT** | ] | |
| **CORPORATION,** | ] | |
| | ] | |
| **Defendants.** | ] | |

**MEMORANDUM OPINION**

This case comes before the court on "Defendants' Motion for Summary Judgment" (doc. 66). The parties have fully briefed the motion. Plaintiffs seek the payment of allegedly due pension benefits, arguing that Defendants mislead them about the calculation of their pension benefit payments, in breach of their fiduciary duties under ERISA. Specifically, the Plaintiffs claim Larry Shepler, Defendants' authorized agent, mislead them to believe that their prior service before Defendants acquired the plant would be used in determining both eligibility for

1

and the amount of retirement benefits.  For the reasons stated below, Defendants' motion is due

to be GRANTED.  A separate order to that effect will be entered simultaneously.

## FACTS

Plaintiff James Ray Stovers began working at the Birmingham, Alabama, plant in 1960

when the plant was owned by Pollock Paper.  He continued to work at the Birmingham plant

throughout Pollock Paper's ownership, followed by St. Regis Paper, and then Princeton

Packaging Corporation.  He was an hourly employee and member of the union until about 1979

or 1980, when he left the union and became a salaried employee.  Stover first became eligible for

a corporate pension when he became a salaried employee with Princeton.

Plaintiff John Gandy began working at the Birmingham plant in 1963 as a union

employee, and he stayed at the plant in that capacity through its acquisition by St. Regis Paper in

1967.  He was a union employee when Princeton acquired the Birmingham plant in 1974, and he

later moved into a salaried position with Princeton.

Huntsman Specialty Films Corporation[1] acquired Princeton's Birmingham plant on

October 5, 1993. Huntsman did not purchase the assets of or accept liability for Princeton's

pension plan. At the time Huntsman acquired the Birmingham plant in October 1993, Huntsman

had in place a Summary Plan Description (SPD) dated March 1993.  Huntsman admits that the

March 1993 SPD did not address the benefits of the employees of the acquired Birmingham

---

[1] Huntsman Specialty Films Corporation merged into Huntsman Design Products
Corporation on May 31, 1995.  Huntsman Design Products Corporation merged into Huntsman
Film Products Corporation on December 31, 1996.  Huntsman Film Products Corporation
merged into Huntsman Packaging Corporation on September 29, 1997.  Huntsman Packaging
Corporation changed its name to Pliant Corporation in October 2000.  The court will adopt the
parties' practice and refer to Defendants as simply "Huntsman."

plant.

Larry Shepler was Manager of Human Resources with Huntsman during the acquisition of the Birmingham plant from Princeton in October 1993.  Shepler had worked as a personnel manager for Goodyear Tire and Rubber Company since 1976, but he chose to go with Huntsman after Huntsman acquired the film division of Goodyear in July 1992.  Shepler and Ken Oswald, Manager of Employee Benefits, visited the Birmingham plant on October 5, 1993, to explain the Huntsman benefits package to the newly acquired employees.  Because Shepler had just experienced an acquisition with Huntsman, he was intimately familiar with transitioning into the Huntsman benefits package.  Furthermore, Shepler asserts that "doubling up" pension benefits was not the industry norm.

Shepler asserts that he used overhead projector slides and circulated a memorandum to help explain the terms of the Huntsman benefits package to the new employees at the Birmingham plant.  Shepler also asserts that the memorandum explained that prior service with Princeton would count towards vesting and eligibility but would not factor into the benefits amount calculation.  (Dfts.' Br. Ex. E).  Defendants have produced the memorandum, which states that employees of the Birmingham plant "will receive credit for [their] prior years of service with Princeton and its predecessors for purposes of eligibility . . . and vesting."  (Dfts.' Br. Ex. E).  The memorandum explicitly states that the Birmingham plant employees would "not receive credit for service with these companies for purposes of the 'years of credited service' portion of the benefit formula."  (Dfts.' Br. Ex. E). Plaintiffs dispute that Shepler used projector slides or circulated a memorandum.  Plaintiffs also dispute that the memorandum stated that former Princeton employees would not receive credit for service in the calculation of pension

3

benefits amounts.

Shepler asserts that he followed the memorandum as a guideline for explaining the pension benefits to the Birmingham plant.  Plaintiffs assert that Shepler did not follow any such memorandum.  Specifically, Plaintiffs assert that Shepler told the Birmingham plant that newly acquired employees would receive credit for service with their prior employers for the purposes of calculating the benefit amount.  Plaintiffs further assert that the only document regarding the pension plan that they received was the March 1993 SPD, which did not reference crediting service time for former Princeton employees.

Plaintiff Stover asserts that he attended the meeting about Huntsman benefits with Ken Oswald and Larry Shepler.  Stover asserts that both Oswald and Shepler said, "After five years of vesting, we'll go back and pick up your original hire dates as far as your retirement benefits go." (Dfts.' Br. Ex. G at 60, 67).  Stover asserts he thought Huntsman would be a very good place to work because of the double pension plan.

Plaintiff Gandy asserts that he attended the meeting about Huntsman benefits and that Shepler said that the former Princeton employees "would be vested in [Huntsman] retirement the day they took over.  And that if [the former Princeton employees] would work five years with [Huntsman], [Huntsman] would go back, pick up all [their] previous years from date of hire toward [their] retirement."  (Dfts.' Br. Ex. J).  Gandy had planned to leave the Birmingham plant until Huntsman took over and, according to his understanding, offered to pay him pension benefits over and beyond what he would be receiving from his former employers for past service.

At the time Plaintiffs retired, Huntsman had in place the Huntsman Packaging Corporation Defined Benefit Pension Plan (the Plan).  The Sixth Amendment to the 1993 Plan

4

was adopted in 1998 and stated that the

> non-union employees at the Birmingham, Alabama facility of the Company who
> became employees . . . [after] the acquisition of that facility from Princeton . . . are
> granted credit for service with the prior owner of the facility under this Plan solely
> for the purposes of eligibility, vesting and eligibility for early retirement . . . [and]
> shall have benefits under this Plan determined by taking into account only service
> since becoming an employee of the Company.

(Dfts.' Br. Ex. B).  Section 13.8 of the Plan also provided that the Pension and Employee

Benefits Committee was the named fiduciary of the Plan.  Section 13.9 of the Plan set out non-

fiduciary administrative functions of the Plan, including orientation of new participants and

advising participants of their rights and options under the Plan.

An SPD dated January 2000, seven years after the acquisition, provided an explanation of

credited service similar to the Plan explanation.  The January 2000 SPD stated that

> the Company has granted non-union employees (hired in connection with the
> acquisition [of the Birmingham plant from Princeton]) credit for service with
> Princeton . . . prior to the acquisition date for vesting, eligibility and normal,
> disability and early retirement eligibility purposes under the Plan. . . . [The]
> pension benefit *amount* earned under this Plan will *not* include prior service with
> Princeton.

(Dfts.' Br. Ex. C) (emphasis added).

Plaintiff Stovers retired in 2001, and Plaintiff Gandy retired in 2000. When Plaintiffs

retired, they signed Separation Agreements and General Releases, which released Huntsman for

all future actions that may arise and stated that they would be entitled to accrued retirement

benefits whether they executed the Agreement or not.  (Dfts.' Br. Exs. I & K). The Separation

Agreements list Plantiffs' original hire dates for the purpose of calculating severance pay, which

Huntsman did calculate based on employment service at the plant prior to its acquisition.  (Dfts.'

Br. Ex. Q).

For the year 2006, Gandy received a total of $2244.96 in pension payments from the Graphic Communications International Union, $349.44 from Princeton's pension plan, and $2691.12 from Huntsman.  (Dfts.' Br. Ex. O).  For the year 2005, Stovers received a total of $630.48 in pension payments from the Graphic Communications International Union, $1575.12 from Princeton's pension plan, $3718.80 from Champion/International Paper, and $6365.04 from Huntsman.  (Dfts.' Br. Ex. P).

Plaintiff Gandy filed suit in the Circuit Court for Jefferson County, Alabama, on May 10, 2002, seeking benefits allegedly promised by Defendants.  Defendants removed under 28 U.S.C. §§ 1441-1446, asserting that the claims arise under the Employee Retirement Security Act of 1974 (ERISA) and that this court has jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1332(e)-(f).  Defendants further asserted that ERISA completely preempts, or "federalizes," Plaintiff's state-law claims.  Plaintiff Stovers filed suit in this court on April 17, 2003, seeking benefits allegedly promised by Defendants.  The court consolidated the Stovers and Gandy cases on July 10, 2003.  Defendants filed a motion for summary judgment on March 14, 2008 (doc. 66).  The parties have fully briefed the motion.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure.  Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  When a district court reviews a motion for summary judgment must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The moving party can meet this burden by offering evidence showing no dispute of material fact *or* by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.*

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue [of material fact].'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita*, 475 U.S. at 586. The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue [of material fact]*.'" *Celotex*, 477 U.S. at 324 (quoting Fed.

R. Civ. P. 56(e)) (emphasis added); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e), 28 U.S.C. app. ("The very mission of summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine [issue of material fact]."). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which the trier of fact could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham*, 193 F.3d at 1282. The non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Id.* Instead, the evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

## DISCUSSION

Plaintiffs allege that Defendants denied them employer provided benefits. Specifically, Plaintiffs allege that the Defendants mislead them to believe that their pension amounts from the Defendants would be calculated based upon their original hire dates, in violation of the Defendants' fiduciary duties under 29 U.S.C. § 1104(a). Plaintiffs allege under 29 U.S.C. §

8

1132(a) that they were entitled to have the benefit amounts from the Defendants calculated from the dates they began working with Defendants' predecessor in 1960 and 1963, not from the date when Defendant Huntsman acquired the Birmingham plant in 1994.  Alternatively, Plaintiffs seek equitable relief in the form of an estoppel of the Defendants from denying them benefits based on their original hire dates, because the Defendants allegedly mislead them to believe their retirement payments would be calculated from their original hire dates.

## I.      Breach of Fiduciary Duty Claims

Plaintiffs assert that Defendants, through their agent Larry Shepler, breached their fiduciary duties as plan administrators under 29 U.S.C. § 1104(a). To establish a claim for breach of fiduciary duty under ERISA, Plaintiffs must show "that the plan fiduciary made material misrepresentations about the plan to the plan participants and the participants relied on that misrepresentation to their detriment." *Hammond v. Reynolds Metals Co.*, 219 Fed. Appx. 910, 916-17 (11th Cir. 2007) (citing *Jones v. Am. Gen. Life & Acc. Ins. Co.*, 370 F.3d 1065, 1074 (11th Cir. 2004)). Plaintiffs assert that Shepler is a plan fiduciary and misrepresented to them the extent of their retirement benefit payments under the Huntsman plan. Though factual disputes remain as to what Shepler told Plaintiffs, Defendants argue that, even taking the facts alleged by Plaintiffs as true, Shepler is not a plan fiduciary and he made no misrepresentations upon which Plaintiffs reasonably could rely.

"A 'fiduciary' with respect to an employee welfare benefit plan essentially includes any person who is charged with administration of the plan." *Swint v. Protective Life Ins. Cov.*, 779 F. Supp. 532, 551 (S.D. Ala. 1991); 29 U.S.C. § 1002(21)(A). A person is a "plan fiduciary to the extent that 'he exercises any discretionary authority or discretionary control respecting

management of such plan or exercises any authority or control respecting management or disposition of its assets,' or 'has discretion authority or discretionary responsibility in the administration of such plan.'" *Swint*, 79 F. Supp. at 551 (quoting 29 U.S.C. § 1002(21)(A)(i) & (iii)). "[A] person need not be designated in writing as a fiduciary in order so to qualify; nor must the [designated] plan sponsor or administrator necessarily serve at all or as the sole plan fiduciary." *Id.*

Plan fiduciaries may rely on agents to advise participants of their rights and options under the plan. *See* Questions and Answers Relating to Fiduciary Responsibilities under ERISA, 29 C.F.R. § 2509.75-8. The plan administrator here authorized Shepler, as part of his duties as a human resources manager, to meet with new plan participants and explain plan benefits to them. The issue before this court, then, is whether the plan fiduciary is bound by or is liable for its agent's alleged misrepresentations.

Because the Eleventh Circuit has not yet addressed the specific issue, both Plaintiffs and Defendants have cited conflicting case law from sister circuits regarding who can create liability under ERISA. The court has considered the meritorious rationales of the various circuit courts and the persuasive guidance from district courts within the Eleventh Circuit and the Department of Labor regulations.  The Department of Labor regulations provide that plan fiduciaries may rely on agents to advise participants of their rights and options under the plan.  *See* Questions and Answers Relating to Fiduciary Responsibilities under ERISA, 29 C.F.R. § 2509.75-8; *see also Taylor v. Peoples Natural Gas*, 49 F.3d 982, 989 (3d Cir. 1995) (finding that a benefits counselor, acting as the authorized agent of the plan administrator, *could* expose the employer to liability for any material misrepresentations made concerning retirement benefits).

10

One judge from the Northern District of Alabama has previously determined that ERISA would apply to claims against not only the ERISA fiduciary, but also against the authorized agent of the plan fiduciary. *Dickerson v. Alexander Hamilton Life Ins. Co. of Am.*, 130 F. Supp. 2d 1271, 1279 (N.D. Ala. 2001) (Nelson, J.). Similarly, a Middle District of Alabama court found that ERISA applied to an employee's fraudulent inducement claim asserted against the ERISA fiduciary for actions undertaken by the fiduciary's agent. *Stoudemire v. Provident Life & Acc. Ins. Co.*, 24 F. Supp. 2d 1252, 1259 (M.D. Ala. 1998). A decision from the Southern District of Alabama has also determined that a hospital's human resources employees, who were charged with the responsibility of providing plan documents and information to hospital employees, could expose the plan administrator to liability. *Richerson v. Can. Life. Assur. Co.*, Civ. A. 04-0490-C, 2005 WL 1027279, at *4 (S.D. Ala. May 2, 2005).

Defendants admit that Shepler was authorized to train, oversee, and implement Plan benefits in the course of his employment. (Dfts.' Br. 9). Defendants do not deny that Shepler was dispatched to the Birmingham plant to orient the newly acquired employees to the Huntsman Plan. Accordingly, the court determines that Shepler was acting as the authorized agent of the plan administrator when meeting with the Birmingham employees. The court, therefore, determines that Plaintiffs can state a claim for breach of fiduciary duties under ERISA against Defendants on the basis of Shepler's conduct. *See Varity Corp. v. Howe*, 516 U.S. 489, 503 (1996) (finding that statements made by company representatives with knowledge of future pension plans are actionable under an ERISA breach of fiduciary duty claim); Restatement (Second) of Agency §§ 27, 49(a)(1958) (discussing liability in the apparent agency context).

The Eleventh Circuit has noted that ERISA plan participants have a right to accurate

information, and "misleading communications to plan participants regarding plan administration will support a claim for breach of fiduciary duty." *Jones*, 370 F.3d at 1072 (citing *Howe v. Varity Corp.*, 896 F.2d 1107, 1110 (8th Cir. 1990) (quoting *Berlin v. Mich. Bell Tel. Co.*, 858 F.2d 1154, 1163 (6th Cir. 1988)).  The Eleventh Circuit has specifically noted that misleading communications regarding "'for example, eligibility under a plan [or] the extent of benefits under a plan'" will support a claim for breach of fiduciary duty under ERISA. *Jones*, 370 F.3d at 1072 (quoting *Drennan v. General Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992)).

Defendants argue, relying on a recent Seventh Circuit opinion, that plan fiduciaries do not breach their duties merely by negligently providing misinformation about a plan. *See Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 639 (7th Cir. 2007).  The Seventh Circuit's decision cited the Supreme Court's decision in *Varity Corp. v. Howe*, 516 U.S. 489, 505-07 (1996), that *intentional* misrepresentations could sustain a claim for breach of fiduciary duty under ERISA.  The Seventh Circuit inferred, then, that *negligent* misrepresentations would not sustain a claim for breach of fiduciary duty under ERISA.

Such an interpretation stretches the Supreme Court's holding and runs contrary to the explicit language of ERISA.  Section 1104(a)(1)(B) of ERISA explicitly states that a fiduciary must exercise its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character with like aims."  Acknowledging this statutory language, the Eleventh Circuit has also stated that "the standard of care owed by ERISA fiduciaries . . . has been described as 'the highest known to law.'" *Herman v. NationsBank Trust Co.*, 126 F.3d 1354, 1361 (11th Cir. 1997) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272

12

n.8 (2d Cir. 1982)).  Allowing for a cause of action for negligent misrepresentations is in keeping

with the statutory language as well as Eleventh Circuit precedent.  *See Jones*, 370 F.3d at 1072

(citing *Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 250-51 (6th Cir. 1992) (finding that a plan

fiduciary has a duty "not to make either intentional *or negligent* misrepresentations" concerning

an ERISA plan) (emphasis added)).

Defendants argue that Shepler made no material misrepresentations, intentionally or

negligently, while meeting with the newly acquired Birmingham employees.  The parties dispute

whether Shepler told Plaintiffs that Huntsman would provide pension benefits calculated from

the employee's original hire dates at the Birmingham plant.  The parties also dispute whether

Shepler circulated a memorandum or used slides that described the different ways in which

Plaintiffs prior service would be treated for retirement benefits purposes.  Defendants argue that,

even taking the facts alleged by Plaintiffs as true, Shepler made no material misrepresentations

while meeting with the newly acquired Birmingham plant employees.

Plaintiffs assert that Shepler informed them that "after five years of vesting, [Huntsman

would] go back and pick up [their] original hire dates as far as [their] retirement benefits go."

(Dts.' Br. Ex. G at 60, 67). Defendants dispute that Shepler made such a statement. Defendants

also allege that Shepler circulated a memorandum explaining the Huntsman benefits plan,

including the fact that prior service with previous plant owners would be taken into account for

vesting but not crediting purposes. Plaintiffs deny that any such memorandum ever existed or, if

it did exist, that it did not explain the difference in vesting versus crediting of prior employment

service.

Despite the lingering factual disputes, Defendants argue that, taking Plaintiffs' allegations

13

as true, Plaintiffs still cannot establish a breach of fiduciary duty claim under ERISA.

Specifically, Defendantas argue that if Shepler stated that Plaintiffs' original hire dates would be

used for retirement benefit determinations, in one sense such a statement would have been

completely accurate, because Huntsman did use Plaintiffs original hire dates for benefit vesting

and eligibility purposes.  Nevertheless, such a statement also could mislead employees, and

allegedly did mislead Plaintiffs, into thinking that Huntsman would also use their original hire

dates for the calculation of retirement benefits, not just for eligibility purposes. "Although not

every error in communicating information regarding a plan will be found to violate a fiduciary's

duty under ERISA . . . fiduciaries must communicate material facts affecting the interests of plan

participants or beneficiaries." *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 590 (7th Cir.

2000).  The court determines that Shepler's statement, if Plaintiffs' allegations are accurate,

constitutes an omission of material facts affecting the interests of the plan participants, because it

fails to address the fact that original hire dates will only be used to determine eligibility and not

benefit amounts.

Defendants also argue that even if Shepler's statements could be characterized as

misleading, Plaintiffs could not have reasonably and detrimentally relied on the resulting

understanding that Huntsman would, in effect, pay them double pension benefits.   Defendants

correctly argue that for the purposes of calculating benefits amounts, an employer may disregard

the service of an employee before that employee first became a participant in the employer's

plan. *Phillips v. Amoco Oil Co.*, 614 F. Supp. 694, 713-15 (D.C. Ala. 1985) (finding that a

successor employer is not required to credit an employee's years of service with a predecessor

employer for retirement purposes and that it is common industry practice to use prior service for

14

eligibility purposes only, if at all); Rules and Regulations for Minimum Standards of Employee

Pension Benefit Plans, 29 C.F.R. § 2530.204-1.  Plaintiffs do not dispute that they became

participants in the Huntsman plan only after Huntsman's acquisition of the Birmingham plant.

Plaintiff Stovers admits that the idea of receiving double pension benefits, from his

previous employers and retroactively from Huntsman, seemed "too good to be true." (Dfts.' Br.

Ex. G at 31).  Plaintiff Stovers also admits that he did not intend to leave the Birmingham plant,

regardless of the pension benefits offered by Huntsman.  (Dfts.' Br. Ex. G at 145-48). Plaintiff

Stovers has not established reliance.

Plaintiff Gandy specifically stated that he had been planning to leave the Huntsman plant

prior to Huntsman taking over and, according to him, promising to pay essentially double

pension benefits for his prior work service.  Plaintiff Gandy also admits to having read the plan

description after the meeting with Shepler.  (Dfts.' Br. Ex. J. at 48).  The Huntsman Plan of 1993

specifically states that service with a former employer may be taken into consideration, but that

the plan "shall not be construed [as] provid[ing] duplicate or overlapping credit for the same

period of service."  (Dfts.' Br. Ex. B at 8, 9).  After reading the description, Gandy interpreted the

explanation of using prior employment years for eligibility but not crediting purposes as not

applying to him, despite the fact that he had never heard of a company paying pension benefits

for prior years of employment with a former employer. (Dfts.' Br. Ex. J at 48, 172).

ERISA requires employers to record benefit plans in writing and, as such, written plan

documents should be considered the primary source of plan information.  *See* 29 U.S.C. §§

1022(a), 1024(b)(1).  "[O]ral representations that conflict with the terms of a written plan will

not be given effect, as the written instrument must control." *Schmidt v. Sheet Metal Workers'*

*Nat'l Pension Fund*, 128 F.3d 541, 546 (7th Cir. 1997), *cert. denied*, 523 U.S. 1073 (1998); *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 58 F.3d 896, 908 (3d Cir. 1995), *cert. denied sub nom. Unisys Corp. v. Pickering*, 517 U.S. 1103 (1996) (finding that a participant's reliance on employer representations were unreasonable where written documents contained an explanation of the conditional nature of the benefits sought). The court determines that Plaintiff Gandy cannot establish reasonable reliance on Shepler's alleged statements, because the 1993 Huntsman plan, though it did not specifically address new Birmingham employees, did specifically state that Huntsman would not count any prior employment in such a way as to create double pension payments for the same years of service.

The court finds that Plaintiffs cannot establish their breach of fiduciary duty claim, because they cannot show reasonable reliance on the alleged misrepresentations of Shepler. Accordingly, the court determines that Defendants are entitled to judgment as a matter of law on the breach of fiduciary duty claim and will grant summary judgment for Defendants on that claim.

## II.    Payment of Benefits and Equitable Estoppel Claims

Plaintiffs also seek to recover benefits allegedly due under the plan pursuant to 29 U.S.C. § 1132(a).  Section 1132(a)(1)(B) provides a cause of action whereby plan participants may seek to recover benefits due under a plan or to clarify their rights to future benefits under the plan. The Huntsman Corporation Defined Benefit Pension Plan of 1993 states that service with a former employer may be taken into consideration, but that the Plan "shall not be construed [as] provid[ing] duplicate or overlapping credit for the same period of service."  (Dfts.' Br. Ex. B at 8, 9).  The court notes that the Plan in its original form, as it would have been at the time the

16

Birmingham plant was acquired, also mentions how employees' prior service with Mobil and Goodyear would be handled. (Dfts.' Br. Ex. B at 29-30). Huntsman had acquired divisions of both Mobil and Goodyear prior to acquiring the Birmingham plant. The Plan states that employees' prior service with their previous employers would be considered for vesting and eligibility purposes, but not for the calculation of benefit amounts.

Appendix C to the Huntsman Plan, added sometime after the acquisition of the Birmingham plant though the record does not indicate an exact date, specifically explains the treatment of past service with Plaintiffs' former employers at the Birmingham plant:

> The non-union employees at the Birmingham, Alabama facility of [Huntsman] who became employees of [Huntsman] . . . in connection with the acquisition of that facility from Princeton . . . are granted credit for service with the prior owner of the facility under this Plan solely for purposes of eligibility, vesting and eligibility for early retirement and . . . shall have benefits under this Plan determined by taking into account only service since becoming employees of [Huntsman].

(Dts.' Br. Ex. B App'x C).

The Plan is not ambiguous. Plaintiffs are not entitled to have their retirement benefit amounts calculated based on their original hire dates at the Birmingham plant. Allowing Plaintiffs to receive pension payments in an amount calculated based on their original hire dates would run contrary to the explicit language of the Huntsman Plan and would allow them to receive duplicitous payments for those years of employment. *See Snair v. City of Clearwater*, 817 F. Supp. 108, 110-11 (M.D. Fla. 1993) (denying the plaintiffs' request for a retroactive calculation of pension benefits based on prior service where such calculation "would allow [those] employees to 'double dip'" and receive in essence two pension payments for the same time of employment).

Plaintiffs alternatively seek an equitable estoppel of the Defendants. "[A] narrow federal common law claim for equitable estoppel may be applied where (1) the provision of the employee benefit plan at issue is ambiguous . . . and (2) representations are made to the employee involving oral interpretation of that provision of the plan." *Schena v. Metro. Life Ret. Plan for U.S. Employees*, No. 2:05-CV-249-FTM-29SPC, 2006 WL 3333550, at *4 (M.D. Fla. Nov. 16, 2006) (citing *Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1286-87 (11th Cir. 1990)). However, as the court already noted, the Huntsman Plan is not ambiguous as to its treatment of prior service with previous owners of the Birmingham plant. "Under well-established Eleventh Circuit law, the oral and written representations cannot modify or amend the ERISA plan, and do not create ambiguity where none existed in the plan." *Schena*, 2006 WL 3333550, at *4. Shepler's oral representations do not override the clear categorization of prior service as described in the Huntsman Plan documents.

Accordingly, the court determines that the Plaintiffs are not entitled to the payment of double pension benefits for their years of employment at the Birmingham plant prior to Huntsman's acquisition of the facility. Furthermore, the Plaintiffs are not entitled to an equitable estoppel that would require Huntsman to make such duplicitous payments. The court, therefore, finds that Defendants are entitled to summary judgment as to the Plaintiffs' claims for payment of benefits and estoppel.

## CONCLUSION

Based on the foregoing analysis, the court concludes that it must GRANT the Defendants' motion for summary judgment as to the Plaintiffs' breach of fiduciary duty claim, because the Plaintiffs have not established reasonable reliance on the alleged misrepresentations of Larry

Shepler.  The Plaintiffs' claims for breach of fiduciary duty, therefore, are DISMISSED.

The court also concludes that it must GRANT the Defendants' motion for summary judgment as to the Plaintiffs claims for payment of benefits and estoppel, because the Plaintiffs have not established that they are entitled to any such relief.  Accordingly, the Plaintiffs' claims for monetary and/or equitable relief are DISMISSED.

DATED this 22nd day of October, 2008.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE